UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-124-GWU

KENNETH GILBERT, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

>
> Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist.

6

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Kenneth Gilbert, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of coronary artery disease with residuals of coronary bypass grafting, diabetes mellitus, hypertension, and osteoarthritis. (Tr. 17). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Gilbert retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 21-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the age of 52, tenth grade education, and work experience as a truck driver could perform any jobs if he were limited to "light" exertion, and also had the following non-exertional restrictions. He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally stoop, crawl, and climb ramps and stairs; (3) could perform no work that would require more than occasional use of his eyes for fine visual acuity such as reading medium to small size print; (4) could not work around unprotected

7

heights or hazardous equipment; and (5) could not be exposed to temperature extremes or concentrated levels of vibration. (Tr. 500-1). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 501).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Gilbert testified that he had essentially stopped working after wrecking his truck in 2001, although he had spent two years in prison for selling crystal meth. (Tr. 470-1). He felt that his biggest problem was chest pain following cardiac bypass surgery in September, 2005. (Tr. 476). His legs were swollen and made it difficult to walk. (Tr. 481). He also had a stroke in February, 2004, while in prison, which had resulted in poor memory. (Tr. 481-3). Other problems included arthritis, diabetes, for which he took oral medication, and high blood pressure. (Tr. 484). The medication he took for arthritis helped his pain, but not the swelling in his legs. (Tr. 485-6). Although he claimed to have high blood sugar despite medication and blurry vision, he had been able to renew his commercial driver's license in January, 2006. (Tr. 467, 490-1). His blood pressure fluctuated despite medication. (Tr. 498).

Records from the federal prison camp in Ashland, Kentucky, indicate that Mr. Gilbert thought he had a stroke in January, 2004, although the initial medical

impression was Bell's palsy (Tr. 163). A CT scan and a later MRI of the head showed no abnormal enhancement, mass, or lesion (Tr. 214, 216) and the condition soon appeared to resolve, although physicians continued to note drooping of the left side of his face (Tr. 152-4). Mr. Gilbert was also treated for uncontrolled diabetes mellitus and hypertension, which was controlled with medication. (E.g., Tr. 137).

After his release from prison in 2005, Mr. Gilbert was briefly treated by Dr. Dennis Ulrich for allergies, bronchitis and right knee complaints. (Tr. 229-36). The plaintiff reported his "stroke" to Dr. Ulrich, who suggested that heavy lifting and carrying were not safe because of the possibility of recurrent vascular events, and also advised Mr. Gilbert not to work until he was doing better with diabetes. (Tr. 236). Shortly thereafter, Mr. Gilbert was seen by Dr. W. T. Becknell and diagnosed with uncontrolled diabetes and hypertension. (Tr. 244-5). Medications were prescribed.

Dr. Kit Beard conducted a consultative examination of Mr. Gilbert on July 26, 2005. His complaints included back and joint pain, diabetes, and a "stroke" in January, 2004, with a current complaint of left facial weakness and left arm weakness at times. (Tr. 250-1). Dr. Beard's examination showed that the plaintiff was overweight, weighing 249 pounds at a height of 5 feet 6 ½ inches, and had an elevated blood pressure. (Tr. 252). He was mildly stiff, but had a normal gait and had no difficulty rising from a seated position. (Id.). There was a mild degree of left facial weakness, edema of the lower extremities with mildly diminished pulses,

9

crepitation of the shoulders and knees, and lumbrosacral spine pain/tenderness with forward flexion limited to 65 degrees. (Tr. 253-4). However, there was no spasm, no sensory loss, and he was able to stand on one leg at a time without difficulty. (Tr. 254). Dr. Beard stated that his objective findings supported limitations with heavy lifting or carrying, prolonged sitting or standing, repetitive squatting, and kneeling and crawling. (Tr. 256). These restrictions are consistent with the ALJ's ultimate finding.

Subsequently, in September, 2005, Mr. Gilbert was admitted to Marymount Medical Center with what was diagnosed as an acute non-Q wave myocardial infarction. (Tr. 257, 262-3). A cardiac catheterization showed severe three-vessel coronary artery disease (Tr. 265-6), and he was transferred to Central Baptist Hospital for a bypass operation (Tr. 288). No permanent functional restrictions were imposed. Later in the month, Mr. Gilbert returned to Marymount with complaints of increasing shortness of breath and pain behind his left ear, and although it was initially felt that he might have had another stroke, a CT scan and MRI of the brain were negative for any new findings, and the CT scan was also said by a consulting neurologist to show essentially no evidence of any previous stroke. (Tr. 318, 320, 341).

Mr. Gilbert was followed by Cardiologist Suresh Rekhraj, who consistently noted that he was stable from a cardiac standpoint and appeared to be doing well, although his blood pressure medication had to be adjusted. (Tr. 367-8, 419-23).

He was advised to exercise as much as he could tolerate. Despite these findings, Dr. Rekhraj submitted a functional capacity assessment limiting the plaintiff to less than full-time sitting and standing, as well as having other non-exertional restrictions not accepted by the ALJ. (Tr. 393-7). The ALJ noted that the cardiologist's actual findings were not supportive of his restrictions (Tr. 22), and the plaintiff does not raise the issue on appeal.

The plaintiff does cite a statement by Mr. Gilbert's most recent family physician, Dr. Emmanuel Yumang, that his multiple medical problems including hypertension, diabetes mellitus, coronary artery disease, osteoarthritis of both knees, "status post" cerebral vascular accident, sleep apnea, and tenosynovitis of the left foot rendered him disabled and unable to work. (Tr. 398). However, this statement represents a vocational conclusion outside the physician's area of expertise, and no specific limitations were given by Dr. Yumang. Moreover, as the ALJ noted, Dr. Yumang's office notes do not reflect a disabling level of impairment. For instance, the physician indicated that Mr. Gilbert's hypertension was controlled with medication, his coronary artery disease was stable, and the only musculoskeletal abnormalities noted were creptitus of the knees and tenderness of the back. (Tr. 402).[1] Regarding the plaintiff's diabetes, although his blood sugar

---

[1] As noted previously, the plaintiff testified that he was on medication that "took care" of his musculoskeletal pain, although not swelling. He testified that Dr. Yumang had not told him anything regarding his lower extremity swelling "because I just go to him about once a month when I can't stand it because I'm telling you I've not got no money."

07-124 Gilbert

was elevated in January and February, 2006, the plaintiff admitted that he was not following diet and only did a little exercise. (Tr. 402). He was also advised to check his blood sugar daily instead of "infrequently." (Tr. 401). In sum, it is not clear that the plaintiff's diabetic condition would cause greater restrictions than found by the ALJ, particularly if he were complying with medical treatment.

The functional capacity found by the ALJ is consistent with the conclusions of a non-examining state agency reviewer, Dr. Robert K. Brown. (Tr. 382-9). Although Dr. Brown did not have the benefit of a review of the entire record, the ALJ could reasonably have accepted his conclusions under the circumstances of this case due to the deficiencies in the treating source opinions.

The decision will be affirmed.

This the 15th day of February, 2008.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**

---

(Tr. 487). However, he admitted he had seen the physician ten times. (Id.). Although there are only a few office notes from Dr. Yumang contained in the transcript, they contain repeated requests for medications for erectile dysfunction, which were prescribed and even increased when they proved to be ineffective. (Tr. 401-3). It is not clear how a person with no money for diabetes test strips (Tr. 402) could afford these medications, or why allegedly disabling conditions were not the subject of greater emphasis by the plaintiff at the office visits.